RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

JANYCE ELAINE BROWN, Deceased; ASA ROBERT
GRAYDON BROWN, a minor child; HELEN
ELIZABETH BROWN, a minor child,
　　　　　　　　　　　*Plaintiffs-Appellants,*

　　　　　　*v.*

UNITED STATES OF AMERICA, the U.S. Department
of Veterans Affairs,
　　　　　　　　　　　*Defendant-Appellee.*

No. 05-1673

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-73411—John Corbett O'Meara, District Judge.

Argued: April 27, 2006

Decided and Filed: June 23, 2006

Before: SUHRHEINRICH, GILMAN, and ROGERS, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Robert P. Walsh, LAW OFFICE OF ROBERT P. WALSH, Battle Creek, Michigan,
for Appellant. Elizabeth Larin, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan,
for Appellee. **ON BRIEF:** Robert P. Walsh, LAW OFFICE OF ROBERT P. WALSH, Battle
Creek, Michigan, for Appellant. Elizabeth Larin, ASSISTANT UNITED STATES ATTORNEY,
Detroit, Michigan, for Appellee.

———————

## OPINION

———————

　　　　ROGERS, Circuit Judge. This Federal Tort Claims Act suit was brought by the family of
a former U.S. Army serviceman, who himself is not a plaintiff. The former serviceman, Arvid
Brown, caught a parasitic infection called Leishmaniasis while serving in the Persian Gulf War in
1991. Arvid transmitted the disease to his family after his discharge. A civilian doctor diagnosed
Arvid with the disease after the family members had already been infected. According to the
plaintiffs, the federal government negligently failed to warn Arvid that he had been exposed to the
disease while stationed in Saudi Arabia. The plaintiffs also claim that the federal government failed

1

to diagnose or treat the illness, neglected to follow proper procedure, committed medical malpractice, and thereby caused them $125 million in damages.

The district court dismissed the complaint for lack of subject matter jurisdiction, citing *United States v. Feres*, 340 U.S. 135 (1950). The *Feres* doctrine, however, does not preclude the plaintiffs' claims to the extent that they seek damages caused by acts or omissions in connection with the government's allegedly negligent 1994 medical examination of Arvid, which occurred while he was a civilian. We therefore reverse in part.

The U.S. Army activated Arvid for service in the Persian Gulf in January of 1991. Arvid arrived in Saudi Arabia a few weeks later near the end of January. While stationed in Saudi Arabia, he was exposed to Leishmaniasis. Leishmaniasis is borne by sand flies. Arvid received military-provided medical care for the bites of sand flies while in Saudi Arabia. The Army released Arvid from active military service on June 4, 1991, a little less than six months after he arrived in Saudi Arabia. At the time he left active service, Arvid had not been diagnosed with Leishmaniasis.

On September 3, 1994, more than three years after his release from active service, Arvid married Janyce Elaine Surface, who has since passed away. Ten days after the wedding, on September 13, 1994, Arvid received a medical examination from the U.S. Department of Veterans Affairs at the Veterans Affairs Medical Center in Michigan. This medical examination was part of the "Persian Gulf War Registry" project. According to the plaintiffs, this examination did not detect Arvid's Leishmaniasis.

Janyce bore Arvid two children: Asa, born August 30, 1995, and Helen, born June 18, 1997. Arvid unknowingly transmitted his Leishmaniasis to Janyce through personal and sexual contact, and Janyce, in turn, transmitted it to their children *in utero*. Arvid was diagnosed with the disease by a civilian doctor on October 1, 1998. His wife and children were diagnosed with the disease about two years later on October 4, 2000.

The complaint alleges that the federal government "knew of the health care risk posed by Leishmaniasis to members of the Armed Services . . . deployed to the Kingdom of Saudi Arabia." The government allegedly knew of these health risks "on or before" August 1990 from a number of sources: published, peer reviewed scientific and medical research in academic journals and conferences conducted by various federal agencies.[1]

In addition, the complaint further states that the government had knowledge of the disease risk to Arvid after his release from active duty. According to the complaint, on November 13, 1991, more than five months after Arvid's release from active duty, the government "ordered that individuals that had served in Saudi Arabia [and other Middle Eastern locations] . . . at any time since August 1, 1990, not donate blood."

Arvid's wife and children brought this action seeking relief under the following theories of liability under the Federal Tort Claims Act (FTCA) and Michigan law: failure to warn, failure to diagnose, failure to treat, failure to follow Defense Department policies and directives, loss of companionship, and medical malpractice. The plaintiffs allege in their complaint that the government acted negligently and caused them harm when it failed to warn Arvid "that he had been exposed to Leishmaniasis while in the Kingdom of Saudi Arabia." In addition, the government negligently failed to warn Arvid "that his service medical records indicated that he may have contracted Leishmaniasis . . . ." Similarly, the government failed to diagnose and treat Arvid's disease in a timely manner. The plaintiffs further allege that the government's failure to implement

---

[1]The complaint says that the following agencies held such conferences: the Department of Health and Human Services, the Food and Drug Administration, and the Center for Disease Control.

its Comprehensive Clinic Evaluation Protocol for Leishmaniasis, issued in June of 1994 (about three months prior to the Browns' wedding), caused the plaintiffs' infections. Finally, the plaintiffs claim that government physicians committed medical malpractice by failing to diagnose and treat Arvid's Leishmaniasis, and by failing to warn him of the risks of the illness.

The district court entered an order dismissing the complaint for lack of jurisdiction. At a hearing, the district court explained that the plaintiffs' lawsuit is barred by *Feres* because it derives from events that took place in the course of Arvid's active duty military service. This appeal followed.

The *Feres* doctrine precludes FTCA liability for injuries to service members when the injuries arise out of or are in the course of activity incident to service. *Feres*, 340 U.S. at 146; *see also United States v. Johnson*, 481 U.S. 681 (1987). The doctrine has been extended to bar a claim of a military dependent where the claim had its genesis in an injury to an active duty service member. But as explained below, the doctrine does not apply to claims based on post-discharge medical malpractice. The family members' claims in this case were therefore not barred to the extent that they attribute their injuries to medical examinations that took place after Arvid's discharge, and any duty to warn that arose from such examinations.

The independent claims of dependents of service members have been barred under *Feres* only where such claims have their "genesis" in an injury to a serviceperson incident to military service. This court for instance applied the *Feres* bar in a suit on behalf of a deceased baby alleging medical malpractice in the prenatal care of the servicewoman mother. *See Irvin v. United States*, 845 F.2d 126, 130-31 (6th Cir. 1988); *see also Monaco v. United States*, 661 F.2d 129, 134 (9th Cir. 1981) (quoted with approval in *Irvin*) (holding that *Feres* bars the claims of the daughter of a serviceman exposed to radiation).

But the bar on a dependent's claims under *Feres* extends no farther than it would to a serviceperson's claim based on the same injury. Therefore, if a claim by Arvid himself would not have been barred by *Feres*, a suit by his dependents is at least to the same extent not barred. In this case, a claim by Arvid for post-discharge medical malpractice would not be barred, and claims by his dependents that have their genesis in such post-discharge malpractice are not barred.

In *United States v. Brown*, 348 U.S. 110 (1954), the Supreme Court held that *Feres* did not bar a tort claim brought by a veteran who alleged that he had received, after his discharge, negligent treatment by government doctors that aggravated an in-service knee injury. *Id.* at 110-12. The *Brown* veteran sought medical care in a Veterans Administration Hospital for an injury to his left knee that had "occurred while [he] was on active duty in the Armed Services." *Id.* at 110. The veteran had been honorably discharged in 1944. *See id.* Seven years later in 1951, Veterans Administration doctors operated on the knee and used a defective tourniquet that caused serious nerve damage. *See id.* at 110-11. The Court explained that *Feres* did not bar an action seeking recovery for the nerve damage caused by the tourniquet:

> The injury for which suit was brought was not incurred while respondent was on active duty or subject to military discipline. The injury occurred after his discharge, while he enjoyed a civilian status. The damages resulted from a defective tourniquet applied in a veterans' hospital. Respondent was there, of course, because he had been in the service and because he had received an injury in the service. And the causal relation of the injury of the service was sufficient to bring the claim under the Veterans Act. But, unlike the claims in the *Feres* case, this one is not foreign to the broad pattern of liability which the United States undertook by the Tort Claims Act.

*Id.* at 112. The Court concluded that "[s]ince the negligent act giving rise to the injury in the present case was not incident to the military service," *Feres* did not preclude the claim from going forward. *Id.* at 113.

*Brown* supports a finding that Arvid could bring a lawsuit against the government, for instance, for whatever injury the 1994 examination might have caused him. Consequently, Arvid's dependents' claims that are based on the same acts or omissions can proceed. Here, as in *Brown*, Arvid received a medical examination after his discharge. The tort duties owed by the treating or examining physicians thus arose after discharge in both the cases of the *Brown* veteran and Arvid. Arvid's medical examination, like the *Brown* veteran's knee operation, related to the health effects of his military service. Just as the military-relatedness of the underlying illness did not bar the *Brown* veterans' lawsuit, neither could the military-relatedness of Arvid's underlying case of Leishmaniasis bar a claim hypothetically brought by Arvid. The *Brown* veteran's nerve damage occurred post-discharge. Likewise, according to the complaint, Arvid's condition worsened due to the lack of diagnosis or treatment after his 1994 examination. Therefore, just as the *Brown* veteran's claim was not incident to service, neither would a claim by Arvid for any injuries stemming from the 1994 examination be incident to service.

Because a hypothetical claim by Arvid for injuries caused by a post-discharge examination would not be barred by *Feres*, plaintiffs' claims having the same basis face no *Feres* bar. *See Irvin*, 845 F.2d at 130-31. In fact, the complaint can be read as attributing much, and perhaps all, of the responsibility for the plaintiffs' infections to the 1994 examination's failure to diagnose Arvid. Asa was born in 1995 and Helen was born in 1997. The plaintiffs could argue that Asa's and Helen's Leishmaniasis could have been mitigated had the government physicians discovered and treated their father's illness in 1994. Further, Janyce's illness might have been avoided entirely, the plaintiffs may argue, since she contracted Leishmaniasis from personal and sexual contact with Arvid.[2] Each of the plaintiffs' tort claims—i.e., failure to warn, failure to diagnose or treat, medical malpractice, loss of companionship, and failure to follow Defense Department policies—may proceed on the basis that the plaintiffs' recoverable injuries had their genesis in Arvid's 1994 medical examination.[3]

The government relies on cases in which the *Feres* doctrine barred claims that the government failed to warn or inform former servicepersons of the dangers of exposure to radiation that occurred during a period of duty. *See, e.g., Heilman v. United States*, 731 F.2d 1104, 1108-09 (3d Cir. 1984); *Lombard v. United States*, 690 F.2d 215, 223-27 (D.C. Cir. 1982); *Laswell v. Brown*, 683 F.2d 261, 266 (8th Cir. 1982). We do not reject the holdings of these cases, although we note that they are arguably in some tension with later holdings from the Seventh Circuit.[4] Instead, we read these cases to be distinguishable. In *Heilman* the Third Circuit followed *Lombard*, and explained that both cases involved the continuing nature of one single tort—failure to warn that continued from before discharge until after: "Since the failure to warn arose at the same time as the

---

[2] It could be argued that Janyce caught Leishmaniasis before Arvid had his 1994 examination, as she and Arvid wed ten days prior to that examination. Janyce and Arvid wed on September 3, 1994, and Arvid underwent his medical examination on September 13, 1994. It is possible that Janyce contracted Leishmaniasis from personal contact with Arvid prior to his medical examination. But the complaint does not provide an estimated infection date for Janyce, and this court must construe the complaint in the light most favorable to the plaintiffs. *Fleming v. U.S. Postal Serv.*, 186 F.3d 697, 698 (6th Cir. 1999). Reading the complaint favorably to the plaintiffs, we conclude for purposes of the motion to dismiss only that Janyce did not contract Leishmaniasis until after Arvid's 1994 examination.

[3] Of course, we express no opinion with respect to other possible hurdles to recovery by plaintiffs, such as whether or not there was a duty or proximate causation.

[4] *Maas v. United States*, 94 F.3d 291, 296 (7th Cir. 1996); *M.M.H. v. United States*, 966 F.2d 285, 288-89 (7th Cir. 1992).

original injury, and both occurred while Heilman was enlisted in the military, the *Feres* doctrine leaves the courts without jurisdiction to entertain the suit." 731 F.2d at 1109. The *Heilman* court explicitly distinguished a district court case in which it was "not clear whether the complaint properly alleged that the United States first learned of the dangers of radiation *subsequent* to discharge." *Id.* at 1109 n.5. The Eighth Circuit in *Laswell* explicitly distinguished *Brown* as follows:

> In *Brown*, there was an affirmative negligent action after-discharge—the misuse of the tourniquet. In the case at bar . . . , the wrongful act occurred while the plaintiff was a member of the armed forces. It is only the government's failure to remedy or, with medical treatment, to limit the damage inflicted while the plaintiff was in the service that leads to a claim for relief.

683 F.2d at 267. Here, plaintiffs' complaint can be read at least in part to challenge post-discharge negligence that is distinct from the mere failure to cure injury or exposure that occurred during a period of duty, particularly in light of the 1994 physical examination. This case is accordingly more like *Brown* than like the radiation exposure cases cited by the government. The key distinction is the post-discharge 1994 examination that arguably created a new duty to warn.

Although the district court has jurisdiction over the plaintiffs' claims on this basis, it has no jurisdiction to award damages for the military's conduct related to Arvid while he was on active duty. For instance, the military's decision to deploy Arvid to Saudi Arabia cannot be used at trial to prove liability, nor can the government's decision not to warn, diagnose, or treat him while he was a soldier. The plaintiffs may not recover any portion of their damages deriving solely from military decisions incident to Arvid's service.

For the foregoing reasons, the judgment of the district court is reversed in part. The case is remanded for proceedings consistent with this opinion.