RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WAYNE G. LOVELY,

                *Plaintiff-Appellant,*

        *v.*

UNITED STATES OF AMERICA,

                *Defendant-Appellee.*

No. 08-3524

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 06-00169—Walter H. Rice, District Judge.

Argued: June 18, 2009

Decided and Filed: June 26, 2009

Before: MOORE and GILMAN, Circuit Judges; PHILLIPS, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Kevin P. Podlaski, CARSON BOXBERGER LLP, Fort Wayne, Indiana, for Appellant. Patrick D. Quinn, ASSISTANT UNITED STATES ATTORNEY, Dayton, Ohio, for Appellee. **ON BRIEF:** Kevin P. Podlaski, Diana Carol Bauer, CARSON BOXBERGER LLP, Fort Wayne, Indiana, for Appellant. Patrick D. Quinn, ASSISTANT UNITED STATES ATTORNEY, Dayton, Ohio, for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Wayne G. Lovely appeals the order of the district court dismissing for lack of subject-matter jurisdiction Lovely's claim brought under the Federal Tort Claims Act ("FTCA"),

---

[*]The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

28 U.S.C. §§ 1346(b), 2671-2680.  Lovely, a former student at the University of Dayton ("UD") and member of the Army Reserve Officers' Training Corps ("ROTC"), brought claims against Defendant-Appellee the United States of America and its agency, the United States Army ROTC Battalion at UD, for violation of Lovely's rights under the Privacy Act, 5 U.S.C. § 552a, and for intentional infliction of emotional distress ("IIED") under the FTCA.  Lovely's claims were based on actions taken by Lovely's ROTC commander in relation to a UD disciplinary proceeding initiated against Lovely by another ROTC cadet.  The district court dismissed Lovely's IIED claim under the *Feres* doctrine, which precludes claims brought under the FTCA "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1950).[1]  On appeal, Lovely argues that the district court erred in dismissing the IIED claim under *Feres* because Lovely was a UD student and not involved in any military activity at the time of his injury.  For the reasons discussed below, we **AFFIRM** the judgment of the district court dismissing Lovely's IIED claim as barred by the *Feres* doctrine.

## I. BACKGROUND

Beginning in August 2001, Lovely was a student at UD and an ROTC cadet with an ROTC scholarship to UD.  In the summer of 2003, Lieutenant Colonel Versalle Washington became the Professor of Military Science and Chair of the Department of Military Science at UD.  As Professor of Military Science, Washington was the ROTC Battalion Commander at UD, with responsibility for training cadets so that they may attain commission as Army officers.  As Lovely's ROTC contract states, "the sole purpose of the ROTC scholarship program is to produce officers for the United States Army."  Record on Appeal ("ROA") at 156 (Contract at 1).  The contract sets forth the financial terms of Lovely's scholarship, under which the government agreed to pay Lovely's tuition, educational fees, and textbooks for three years, as well as a subsistence allowance and pay during certain periods.  The contract also specifies that Lovely's

---

[1]The district court also dismissed Lovely's Privacy Act claim on statute-of-limitations grounds. Because Lovely does not appeal the dismissal of his Privacy Act claim, we have no occasion to address that claim.

education was to be completed in May 2005 and that Lovely agreed to "[r]emain a full-time student at [UD] until [receiving his] degree." ROA at 157 (Contract at 2). Lovely also agreed to "[m]aintain eligibility for enrollment in ROTC, enlistment in the USAR, and commissioning, as defined by statute, Army regulation, and this contract, throughout the period of this contract." *Id.* If Lovely failed to complete the educational requirements or other terms of the contract or committed misconduct, he could either be ordered to active duty or instead be required to reimburse the United States for his educational costs paid under the contract.

In December 2003, Dr. Mark Ensalaco, Director of the Department of International Studies at UD, discovered that Lovely had plagiarized a research paper for one of Ensalaco's courses. At that time, Ensalaco orally told Washington of the plagiarism and offered to prepare for Washington a written statement about the plagiarism. It does not appear that Washington took Ensalaco up on the offer at that time.

In January 2004, a female cadet reported to Washington that Lovely had sexually assaulted her in September 2003. She declined to press criminal charges, but accepted Washington's recommendation that she see a counselor at UD's counseling center. Upon the advice of Dr. Carol Cummins-Collier at the counseling center, the female cadet decided to pursue proceedings against Lovely through the UD disciplinary board. A UD disciplinary-board hearing was scheduled for February 17, 2004. The female cadet asked Washington if he would testify for her at the hearing, but he declined. The female cadet, however, already knew of Lovely's plagiarism and asked Washington to obtain a statement about the plagiarism from Ensalaco so that she could use it at the hearing to discredit Lovely. Washington contacted Ensalaco and asked him to send Washington the previously offered statement. The day before the hearing, Ensalaco sent Washington an email describing the plagiarism incident, and Washington then printed the email and gave a copy to the female cadet. The female cadet presented the statement to the UD disciplinary board at the February 17 hearing. After the hearing, Lovely asked Washington about the email, and Washington confirmed that he had requested the

statement from Ensalaco and had given the email to the female cadet at her request. Lovely also asked Ensalaco how the female cadet received the document, and Ensalaco stated that he sent the email to Washington at Washington's request.

The board found that Lovely engaged "in non-consensual sexual intercourse" with the female cadet. ROA at 52 (Lovely Aff. 6/11/2004 at 5). The UD Judicial Review Committee denied Lovely's subsequent appeal, and he was suspended on March 8, 2005.

In his complaint, Lovely makes several allegations that Washington took other actions against Lovely in relation to the hearing. Lovely alleges that Washington told other ROTC cadets that Lovely had admitted at the hearing that he had sexually assaulted the female cadet. Lovely also alleges that Washington told other cadets that they should support the female cadet and that Washington intimidated one of Lovely's witnesses so that the witness did not testify at the hearing.

After the UD disciplinary proceedings, Washington initiated proceedings to remove Lovely from the ROTC program. Lovely claims that Washington improperly inserted himself into these proceedings by, for example, rejecting the suggestion of the UD Dean of Students that disenrollment could be prevented and insisting on proceeding with disenrollment using UD's documents as supporting evidence. Lovely eventually was disenrolled from ROTC for misconduct, preventing any eligibility to re-enroll. Lovely also had to repay the ROTC scholarship money that he had been awarded.

Lovely filed a claim for damages with the Army, which was denied, primarily on the basis that *Feres* precluded Lovely, who was enlisted in the Army at the time of the alleged injury, from recovering for an injury incident to service. On June 9, 2006, Lovely filed a complaint in the United States District Court for the Southern District of Ohio asserting a claim based on violation of the Privacy Act. Lovely then filed an amended complaint on November 6, 2006, adding his IIED claim under the FTCA. The amended complaint alleged that Lovely suffered economic damages, including loss of his college funding and other earnings, and mental, emotional, and psychological damages, such as loss of reputation, depression, and humiliation. The government filed

a motion to dismiss the Privacy Act claim, and later a motion to dismiss the IIED claim under Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, arguing that the district court lacked subject-matter jurisdiction due to the *Feres* doctrine and that Lovely's complaint failed to state a claim. On March 17, 2008, the district court entered a decision granting the government's motion to dismiss both claims. The district court dismissed the IIED claim on the basis that the court lacked subject-matter jurisdiction as a result of the *Feres* doctrine because Lovely's alleged injuries arose out of or were in the course of activity incident to military service. Lovely now appeals the district court's dismissal of his IIED claim.

## II. ANALYSIS

### A. Standard of Review

"We review de novo a district court's determination of the applicability of the *Feres* doctrine." *Fleming v. United States Postal Serv.*, 186 F.3d 697, 698 (6th Cir. 1999). Here, the district court dismissed Lovely's IIED claim for lack of subject-matter jurisdiction pursuant to the *Feres* doctrine.[2] "We normally review de novo the district court's decision to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004). "Where the district court does not merely analyze the complaint on its face, but instead inquires into the factual predicates for jurisdiction, the decision on the Rule 12(b)(1) motion resolves a 'factual' challenge rather than a 'facial' challenge, and we review the district court's factual findings for clear error." *Id.*; *accord RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996) ("Where a trial court's

___

[2]Neither party disputes that the *Feres* doctrine is jurisdictional in nature. Although the Supreme Court has not considered this question, at least six courts of appeals have specifically held that, because "[s]overeign immunity is a jurisdictional doctrine, . . . [t]he *Feres* doctrine, which limits the scope of the FTCA's waiver of sovereign immunity, is likewise jurisdictional." *Brown v. United States (Brown I)*, 151 F.3d 800, 803-04 (8th Cir. 1998); *see also Schnitzer v. Harvey*, 389 F.3d 200, 202 (D.C. Cir. 2004); *Jones v. United States*, 112 F.3d 299, 301 (7th Cir. 1997); *Wake v. United States*, 89 F.3d 53, 57 (2d Cir. 1996); *Atkinson v. United States*, 825 F.2d 202, 204 n.2 (9th Cir. 1987); *Stanley v. CIA*, 639 F.2d 1146, 1157 (5th Cir. 1981). The Sixth Circuit likewise has treated the application of *Feres* as a jurisdictional question, although without explicitly so holding. *See, e.g.*, *Brown v. United States (Brown II)*, 451 F.3d 411, 412, 416 (6th Cir. 2006) (concluding that the district court had "no jurisdiction to award damages for the military's conduct related to [the injured serviceman] while he was on active duty" under the *Feres* doctrine). Because we review de novo the district court's application of the *Feres* doctrine regardless of whether it is a jurisdictional doctrine, we need not decide this question.

ruling on jurisdiction is based in part on the resolution of factual disputes, a reviewing court must accept the district court's factual findings unless they are clearly erroneous."). "However, review of the district court's *application of the law* to the facts is *de novo*." *RMI Titanium*, 78 F.3d at 1135. Even when the parties raise a "factual" challenge by submitting exhibits relating to subject-matter jurisdiction, we give deference to the district court only to the extent the district court actually made factual findings. *See Howard*, 382 F.3d at 636-37.

## B. Application of the *Feres* Doctrine

With the Federal Tort Claims Act, Congress created a waiver of sovereign immunity under which the United States may be held liable for "tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *see also* 28 U.S.C. § 1346(b)(1) (granting exclusive jurisdiction to the federal district courts "of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," subject to the procedures set forth in the FTCA).[3] The language of the FTCA exempts from this waiver of immunity claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). In *Feres v. United States*, 340 U.S. 135 (1950), the Supreme Court significantly broadened this exception and created the *Feres* doctrine, pursuant to which "the Government is not liable under the Federal Tort

---

[3]The intentional-torts exception to the FTCA states that the United States has not waived sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). The government does not dispute that the FTCA applies to IIED claims generally, and we have not previously treated such claims as barred by the § 2680(h) exception. *See Mackey v. United States*, 226 F.3d 773, 775 n.1 (6th Cir. 2000) (applying *Feres* doctrine to dismiss IIED claim); *cf. Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996) ("In determining whether a claim 'arises out of' one of the enumerated torts, we look beyond a plaintiff's classification of the cause of action to examine whether the conduct upon which the claim is based constitutes one of the torts listed in § 2680(h)."). Because we affirm the district court's dismissal of Lovely's claim as barred by the *Feres* doctrine, we do not consider whether § 2680(h) would bar Lovely's particular IIED claim.

Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146; *accord Fleming*, 186 F.3d at 699.

As this court previously noted, subsequent Supreme Court cases have further extended this doctrine:

> Review of these Supreme Court precedents makes it clear that in recent years the Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military, without regard to the location of the event, the status (military or civilian) of the tortfeasor, or any nexus between the injury-producing event and the essential defense/combat purpose of the military activity from which it arose.

*Major v. United States*, 835 F.2d 641, 644-45 (6th Cir. 1987). In the most recent Supreme Court case examining the *Feres* doctrine, the Court explained that "a service member is injured incident to service" if the injury is "because of his military relationship with the Government," *United States v. Johnson*, 481 U.S. 681, 689 (1987), and reiterated the three broad rationales underlying the doctrine, *id*. at 689-90; *see also United States v. Shearer*, 473 U.S. 52, 57 (1985); *Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 671-72 (1977). "First, '[t]he relationship between the Government and members of its armed forces is "distinctively federal in character."'" *Johnson*, 481 U.S. at 689 (alteration in original) (quoting *Feres*, 340 U.S. at 143 (quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 305 (1947))). "Second, the existence of [] generous statutory disability and death benefits is an independent reason why the *Feres* doctrine bars suit for service-related injuries." *Id*. "Third, . . . suits brought by service members against the Government for injuries incurred incident to service . . . are the '*type[s]* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.'" *Id*. at 690 (alteration in original) (quoting *Shearer*, 473 U.S. at 59).

Although this is a close case presenting unique circumstances that do not fall directly in line with other cases applying the *Feres* doctrine, we conclude, in light of the doctrine's rationales and the courts' broad interpretation of the doctrine, that the district

court properly dismissed Lovely's IIED claim as barred by the *Feres* doctrine. Initially, Lovely argues that his claims are not subject to the *Feres* doctrine because he was not on active duty or subject to military command or discipline while attending classes at UD or while involved in the UD disciplinary proceedings. We have noted, however, that "the *Feres* doctrine extends beyond situations where the soldier is acting pursuant to orders or while subject to direct military command or discipline." *Sidley v. United States*, 861 F.2d 988, 990 (6th Cir. 1988); *accord Skees v. United States*, 107 F.3d 421, 423 (6th Cir. 1997) ("[T]he term 'incident to service' . . . is not a term limited to military training and combat.").

As an ROTC cadet, Lovely was enlisted in the Army and was therefore a member of the armed forces, even if not on active duty. Although we have not yet considered the *Feres* doctrine as applied to claims brought by ROTC cadets, both the Eighth and the Second Circuits have done so, concluding that the doctrine applied when the ROTC cadet's injuries occurred in the course of activity incident to military service. *See Brown v. United States (Brown I)*, 151 F.3d 800, 805 (8th Cir. 1998) (concluding that the *Feres* doctrine barred ROTC cadet's medical-negligence claim against Army physicians who initially treated an injury the cadet sustained during required ROTC activities); *Wake v. United States*, 89 F.3d 53, 58-59 (2d Cir. 1996) (concluding that *Feres* doctrine barred claim of ROTC cadet injured in a car accident while returning from a required physical examination even though "as a member of the NROTC and as an enlisted, inactive member of the Navy Reserves she lacked an official military status at the time of the accident"). Moreover, the Tenth Circuit, in an unpublished opinion, upheld the district court's dismissal under the *Feres* doctrine of the sexual-harassment claims of two ROTC cadets even though the cadets were not on active duty. *Morse v. West*, No. 97-1386, 1999 WL 11287, at *4 (10th Cir. Jan. 13, 1999). We agree and conclude that Lovely's inactive status as an ROTC cadet does not preclude his claims from being subject to the *Feres* doctrine.

Lovely next argues that his injury did not arise from an activity incident to military service but instead from his activities as a UD student attending a UD

disciplinary proceeding, activities which Lovely claims are "distinctly non-military." Lovely Br. at 15. We conclude, however, that application of the *Feres* doctrine to Lovely's claim is supported by the third rationale stated in *Johnson*, because Lovely's injuries stemmed from the manner in which his commanding officer chose to conduct the affairs and discipline of his ROTC battalion. *See Shearer*, 473 U.S. at 57 (noting that the *Feres* doctrine is best explained in part by "the peculiar and special relationship of the soldier to his superiors [and] the effects of the maintenance of such suits on discipline" (internal quotation marks omitted)).[4]

Lovely's complaint alleges that he suffered economic as well as mental, emotional, and psychological injuries when Washington released the Ensalaco email to a fellow cadet, made false statements about Lovely to other UD students, wrongfully interfered with the UD disciplinary board and the ROTC disenrollment proceedings, and intimidated Lovely's witness prior to the UD proceedings.[5] Lovely's injuries, such as loss of his college funding and loss of his reputation, would not have occurred had Lovely not been an ROTC cadet under Washington's command and therefore arose "because of his military relationship with the Government." *Johnson*, 481 U.S. at 689. All of the students involved in these incidents were ROTC cadets. Washington would not have been offered or have been able to obtain the email from Ensalaco had he not been Lovely's commanding officer. Similarly, Washington would not have had any involvement in Lovely's UD disciplinary hearing had he not been Lovely's ROTC commanding officer. To the extent Lovely alleges that Washington interfered in the

---

[4] Although Lovely does not discuss his claims in light of the other two rationales behind the *Feres* doctrine, we note that one of the rationales, the availability of alternative compensation systems for servicemen, is not implicated here. Most cases under the *Feres* doctrine have arisen from physical injuries or death due to alleged negligence on the part of the United States. *See, e.g.*, *Johnson*, 481 U.S. at 683 (serviceman died during a rescue mission allegedly because of helicopter pilot's negligence). In such cases, the serviceman or his or her family may be entitled to statutory benefits from the death or injury. *See, e.g.*, *id.* at 691. As long as Lovely's injury arose from activity incident to service, however, this factor is not dispositive. *See Sidley*, 861 F.2d at 991 ("While the existence of an alternate compensation system, such as the [Veterans Benefit Act], makes the sometimes harsh effect of the *Feres* doctrine more palatable, the denial or unavailability of these benefits does not affect the applicability of the *Feres* doctrine.").

[5] Finding no factual support for the allegations that Washington intimidated Lovely's witness or exerted unlawful influence over the UD proceedings, the district court refused to consider these allegations. Even if, however, we accept the statements in Lovely's affidavits as true, these allegations would actually support the application of the *Feres* doctrine, as they concern Washington's conduct of the ROTC program and his relationship with other ROTC cadets.

ROTC disenrollment process, this injury even more clearly would seem to arise from an activity incident to military service. Overall, as the district court noted, "[f]or the Court to question LtC. Washington's interactions with the cadets assigned to his ROTC unit would involve the Court in just the sort of prying into military affairs, at the expense of military discipline and effectiveness, that the *Feres* doctrine cautions against." Dist. Ct. Op. at 36 (citing *Brown v. United States (Brown III)*, 462 F.3d 609, 614-15 (6th Cir. 2006)).

The structure of the ROTC program also supports the conclusion that Lovely was engaged in activity incident to service. As the district court explains in detail, attendance at UD was a requirement of Lovely's ROTC contract, and Lovely received an ROTC scholarship to attend UD in exchange for his performance under the contract. *See Wake*, 89 F.3d at 58 ("Also relevant is whether the activity is limited to military personnel and whether the service member was taking advantage of a privilege or enjoying a benefit conferred as a result of military service."). Washington's job as ROTC Commander was to screen cadets as candidates for commissioning as Army officers. Washington's treatment of Lovely, even if tortious, was an exercise of military discipline. Lovely argues that his injuries could not have arisen incident to service because they arose "because of Washington's deviation from his military obligations." Lovely Br. at 18. A primary rationale behind the *Feres* doctrine, however, is that this very question is for the military, not the courts, to decide. Lovely cannot escape the application of *Feres* simply by alleging that Washington improperly exercised his authority over Lovely and the other cadets. *See Mackey v. United States*, 226 F.3d 773, 776 (6th Cir. 2000) (concluding that plaintiff's sexual-harassment claims were barred by *Feres* and rejecting plaintiff's argument "that her claims do not implicate issues of judgment, discretion, or command because the activities she complains of 'simply cannot be viewed as acceptable in any fashion'"). Lovely's injuries stemmed directly from the disciplinary decisions of his commanding officer. Although Lovely is correct that he was engaged in the activity of attending school, he also was engaged in the activity of serving as an ROTC cadet and an ROTC scholarship student. The two are not mutually exclusive.

## III.  CONCLUSION

Because we conclude that the injuries underlying Lovely's claim arose from activity incident to his military service, we **AFFIRM** the judgment of the district court dismissing Lovely's IIED claim as barred by the *Feres* doctrine.