NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  19a0622n.06

Case No. 19-3216

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MATT COOPER,

    Plaintiff-Appellant,

v.

TOLEDO AREA SANITARY DISTRICT,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)

FILED

Dec 17, 2019

DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE:  GIBBONS, KETHLEDGE, and BUSH, Circuit Judges

**JOHN K. BUSH, Circuit Judge.**  Plaintiff-Appellant Matt Cooper brought this citizen suit under the Clean Water Act to hold Defendant-Appellee Toledo Area Sanitation District ("TASD") liable for its failure to comply with its obligations under its applicable Clean Water Act permit.  The district court dismissed the complaint, finding that Cooper failed to comply with the Clean Water Act's pre-suit notice requirement because the notice lacked the necessary specificity of the date of TASD's violation.  Because Cooper's pre-suit notice sufficiently identified the date of the alleged violation, we **REVERSE**.

## I.

TASD is a political subdivision of the State of Ohio that operates in Toledo.  To control the mosquito population, TASD discharges pesticides by spraying and misting into communities

and waterways throughout Lucas County. According to the allegations in the complaint, TASD discharged over 1,000 gallons of pesticide in 2014 and over 3,000 gallons in 2015.

The parties agree that TASD's pesticide discharges are subject to permitting requirements under the Federal Water Pollution Control Act, and the Ohio Water Pollution Control Act, 33 U.S.C. § 1251 et seq., and Ohio Rev. Code § 6111. Accordingly, TASD operates pursuant to a National Pollutant Discharge Elimination System ("NPDES") General Permit issued by the Ohio EPA. The original permit, NPDES Permit No. OHG870001 (the "2011 Permit"), was issued October 17, 2011, became effective October 31, 2011, and expired by its terms on October 31, 2016. The 2011 Permit was the operative NPDES permit at the time the suit was filed. After this action began, the Ohio EPA issued a renewed permit, NPDES Permit No. OHG870002 (the "2017 Permit") (collectively with the 2011 Permit, the "General Permit"), effective January 1, 2017, which is set to expire December 31, 2021.

In addition to the general requirements governing pesticide discharge, Part V of the General Permit imposes additional obligations on "applications greater than treatment area thresholds." R. 29-9, PageID 1421; *see* R. 33-1, PageID 1798. For pesticides used for "Mosquitoes and Other Insect Pests," these conditions are triggered for any Permittee that applies pesticide to 6,400 acres of treatment area or greater. R. 29-9, PageID 1421; *see* R. 33-1, PageID 1798. As relevant here, Part V requires that polluters who are subject to its conditions prepare a Pesticide Discharge Management Plan ("PDMP") for the pest management area, which must document how the polluter will implement the Permit's effluent limitations. It is undisputed that TASD was required to create a PDMP under the General Permit and that it did not do so until after this lawsuit was filed.

On March 12, 2016, Cooper sent TASD a Notice of Intent to File Citizen Suit for Clean Water Act Enforcement expressing his intent to sue TASD under the citizen-suit provision of the Clean Water Act for TASD's failure to comply with its requirements under the General Permit. The Notice stated that TASD "routinely discharges hundreds of gallons of chemical pesticides each year into residential neighborhoods and waterways covering 300,000+ acres of land." R. 13-2, PageID 64. It went on to state that "[u]nder the Pesticide General Permit, large-volume-chemical-pesticide polluters such as TASD must comply with the mandatory provisions of Part V of the permit. TASD must publish a detailed Pesticide Discharge Management Plan (PDMP)." *Id.*, PageID 65. The Notice further provided that "[a]lthough TASD has been required to comply with the Pesticide General Permit since its effective date, October 2011, the people of Lucas County have yet to gain any benefit from this law." *Id.* The Notice also set out additional General Permit requirements that it claimed TASD was violating and listed TASD's activities that Cooper claimed to be harmful.

TASD responded by letter on March 28, 2016, "disagree[ing] with the factual assertions in the Notice" and denying any violation of the General Permit. R. 29-10, PageID 1468. After further correspondence, Cooper sent a final letter on August 5, 2015, addressed "Dear Judge," reiterating that TASD was violating the General Permit. It stated that "TASD's massive toxic-chemical dispersal is governed, in part, by Part V of the permit, because they use pesticides to control mosquitoes covering more than 6400 acres of treatment area." R. 29-10, PageID 1465.

Cooper filed this citizen suit on July 1, 2016, alleging that TASD was in violation of the General Permit because, *inter alia*, it failed to prepare and implement a PDMP. The complaint sought declaratory and injunctive relief, attorneys' fees and costs, and all other appropriate relief. Following the commencement of this lawsuit, TASD prepared and submitted a PDMP.

TASD moved to dismiss the complaint for lack of subject matter jurisdiction. TASD argued that the pre-suit Notice, a mandatory condition precedent to bringing suit, was inadequate because Cooper failed to identify (1) the date of TASD's alleged violation, and (2) the conduct constituting the violation. TASD also argued that, in light of its subsequent adoption of a PDMP, the district court was without jurisdiction either because Cooper no longer had standing or because the controversy was moot.

The district court agreed that the Notice was deficient because it failed to identify a specific date of the violation but, after rejecting TASD's standing and mootness arguments, denied the motion to dismiss. TASD moved under Rule 59(e) to alter or amend the judgment, arguing that the failure to dismiss was a clear error of law in light of the district court's finding that the Notice was deficient. The district court granted the motion and dismissed the case. Cooper appealed.

**II.**

We review dismissal under Federal Rule of Civil Procedure 12(b)(1) de novo. *Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014). "But 'where the district court does not merely analyze the complaint on its face, but instead inquires into the factual predicates for jurisdiction, the decision on the Rule 12(b)(1) motion resolves a "factual" challenge rather than a "facial" challenge.'" *Id.* (alterations omitted) (quoting *Lovely v. United States*, 570 F.3d 778, 781–82 (6th Cir. 2009)). We review factual findings for clear error but review de novo the district court's application of law to fact. *Id.* (citing *Lovely*, 570 F.3d at 782 (in turn citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996))).

**III.**

The sole issue on appeal is whether the March 12, 2016 Notice was deficient. Because the Notice complied with the regulatory requirements of the citizen suit provision of the Clean Water Act, we reverse.

A.

"The Clean Water Act prohibits the discharge of any 'pollutant' into navigable waters from any 'point source' unless the EPA issues a permit under the NPDES permitting program, 33 U.S.C. §§ 1311(a), 1342 . . . ." *Nat'l Cotton Council of Am. v. United States E.P.A.*, 553 F.3d 927, 930 (6th Cir. 2009). Parties therefore may discharge pollutants into navigable waters only if they first obtain a permit authorizing the discharge. *See id.* To reduce the regulatory burden on covered entities, however, states may adopt general permits that "allow for the discharge of a specific pollutant or type of pollutant across the entire region." *Id.* If the state adopts such a permit, "covered entities, in some cases, need take no further action to achieve compliance with the NPDES besides adhering to the [general] permit conditions." *Id.* at 931 (quoting *S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 108 n.* (2004)). There is no dispute that under this court's holding in *National Cotton Council of America*, TASD can only discharge pesticides pursuant to an NPDES permit, and there is further no dispute that, in this case, the only applicable permit is the General Permit. *See* 553 F.3d at 940.

The Clean Water Act contains a citizen-suit provision that authorizes citizens to commence suit against any "government instrumentality or agency . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1). However, a citizen must provide the covered entity notice of his intent to sue before bringing such an action. Accordingly, that section provides that "[n]o action may be commenced . . . prior to sixty days

after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator." *Id.* § 1365(b)(1)(B). "[T]he purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." *Atl. States Legal Found., Inc. v. United Musical Instruments, U.S.A., Inc.*, 61 F.3d 473, 476 (6th Cir. 1995) (quoting *Gwaltney of Smithfield v. Chesapeake Bay Found. Inc.*, 484 U.S. 49, 59–60 (1987)).  And similarly, "[t]he 60-day notice provides federal and state governments with the time to initiate their own enforcement actions," *Sierra Club v. Hamilton Cty. Bd. of Cty. Comm'rs*, 504 F.3d 634, 637 (6th Cir. 2007), which would in turn preclude a citizen suit.

Under the relevant EPA regulations governing the pre-suit notice requirement, the notice must "include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice."  40 C.F.R. § 135.3(a); *see Sierra Club*, 504 F.3d at 637.

The pre-suit notice requirement is a mandatory condition precedent to bringing a citizen suit.  *See Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 31 (1989) (dismissing for failure to comply with notice provision of Resource Conservation and Recovery Act); *Bd. of Trs. of Painesville Twp. v. City of Painesville*, 200 F.3d 396, 400 (6th Cir. 1999) (same for Clean Water Act); *United Musical Instruments*, 61 F.3d at 478 (same for Emergency Planning and Community Right to Know Act); *see also Sierra Club*, 504 F.3d at 644 (acknowledging requirement for Clean Water Act).[1]  Dismissal is therefore required if the plaintiff fails to provide notice prior to bringing suit,

---

[1] Although the Supreme Court declined to determine whether the pre-suit notice requirement was jurisdictional or simply mandatory under the statute, *see Hallstrom*, 493 U.S. at 31, we have described the notice provision as a

or if it provides notice that is somehow deficient. *See Hallstrom*, 493 U.S. at 31 (failure to notify state and federal agencies); *United Musical Instruments*, 61 F.3d at 478 (failure to identify date of the violation). This court has held that to satisfy the notice requirement, the notice must "contain sufficient information to allow Defendants to identify all pertinent aspects of its [alleged] violations without extensive investigation." *Sierra Club*, 504 F.3d at 644.

We find the March 12, 2016 Notice complied with the requirements of 40 C.F.R. § 135.3(a). The notice identified the "specific standard . . . alleged to have been violated" (Part V of the General Permit, R. 13-2, PageID 65); the "activity alleged to constitute a violation" (failure to publish a PDMP, R. 13-2, PageID 65); the "person or persons responsible for the alleged violation" (TASD, R. 13-2, PageID 64); the "location of the alleged violation" (Lucas County, Ohio, R. 13-2, PageID 64); the "date or dates of such violation" ("since [the General Permit's] effective date, October 2011," R. 13-2, PageID 65); and "the full name, address, and telephone number of the person giving notice." No more is required.

In finding to the contrary, the district court relied on *United Musical Instruments*, 61 F.3d at 478. That case involved the Emergency Planning and Community Right-to-Know Act of 1986 ("EPCRA"), which requires certain owners and operators to file reports about their storage release of toxic chemicals and authorizes citizen enforcement—with a similar pre-suit notice requirement—against owners and operators who fail to file the required forms. *See id.* at 474; *see also* 42 U.S.C. §§ 11023(a), 11023(g). The plaintiffs in that case sued on the grounds that the

---

"jurisdictional prerequisite" to bringing suit, *Bd. of Trs. of Painesville Twp.*, 200 F.3d at 400; *Walls v. Waste Resource Corp.*, 761 F.2d 311, 316 (6th Cir. 1985). But, we have also acknowledged that the Court left open the question of whether the notice requirement is jurisdictional, *see United Musical Instruments, U.S.A., Inc.*, 61 F.3d at 478 n.6, and some of our sister circuits have held that it is not. *Compare Am. Canoe Ass'n, Inc. v. City of Attalla*, 363 F.3d 1085, 1088 (11th Cir. 2004) (notice requirement nonjurisdictional); *Lockett v. E.P.A.*, 319 F.3d 678, 682–82 (5th Cir. 2003) (same), *with Waterkeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 916 (9th Cir. 2004) ("In our circuit, compliance with this notice provision is required for jurisdiction). We do not dwell on the question, however, because we find that Cooper complied with the notice requirement in any event.

defendants had failed to timely file those forms. *United Musical Instruments*, 61 F.3d at 474. We affirmed the district court's dismissal of the complaint, holding that the notice was inadequate as to one of the alleged violations. *Id.* Although the notice stated an intention to sue for failing to file the form "for calendar years 1987–1990," the complaint alleged violations through calendar year 1991. *See id.* at 478. The notice further stated that the defendant "may also be responsible for violations not yet known." *Id.* We held that this was insufficient notice as to the 1991 violations because "the vague warning of possible other claims failed to inform [the defendant] of the year of the additional alleged violation or even the specific EPCRA reporting requirement involved." *Id.*

That case says little about the violation at issue here. As both parties acknowledge, TASD was out of compliance with the requirements of Part V since the effective date of the General Permit and up until after this suit was commenced. The Notice here was sufficient because it identified the General Permit's effective date as the relevant date of the violation; for an ongoing violation such as this, it is not clear what other information could even be provided.[2]

TASD argues that the notice is insufficient because Cooper "fail[ed] to list the exact effective date of the 2011 permit and also fail[ed] to specify that TASD has been required to comply with the PDMP requirement every day since the effective date of the 2011 Permit." Appellee Br. at 15. We find these arguments unpersuasive. The Notice provides that TASD has been required to comply with Part V "since [the General Permit's] effective date, October 2011." R. 13-2, PageID 65. Even if TASD were somehow uncertain about the specific day, it could simply look to the General Permit itself, the sole authority under which it operated, and identify its

---

[2] The district court acknowledged that violations alleged to have occurred "on a daily basis" need only identify the date on which the violation begins, but did not explain how the alleged violation here was not one that occurred daily. R. 38, PageID 1852.

effective date of October 31. This was certainly "sufficient information to allow Defendants to identify all aspects of its . . . violations without extensive investigation." *Sierra Club*, 504 F.3d at 644. Moreover, because the alleged violation was the failure to take a specific act mandated by the permit, the violation was necessarily ongoing until the action was taken.

B.

TASD further argues that this court should affirm on an alternative basis: that Cooper "fail[ed] to state the <u>reason</u> TASD must have a PDMP." Appellee Br. at 15. TASD contends that Cooper was required to clearly state the "parameters of the permitee's specific activity" triggering the Part V requirements. *Id.* at 16. In its brief, TASD contends that because of a good-faith misunderstanding of its regulatory requirements, it "did not know it was required to produce a PDMP prior to receiving Mr. Cooper's <u>complaint</u>." *Id.* at 7.

Contrary to TASD's assertion, the March 12, 2016 Notice did state the reason a PDMP was required; the notice stated that TASD "discharges hundreds of gallons of chemical pesticides each year into residential neighborhoods and waterways *covering 300,000+ acres of land*." R. 13-2, PageID 64 (emphasis added). The notice further stated that "large-volume-chemical-pesticide polluters such as TASD must comply with the mandatory provisions of Part V. of the permit." *Id.*, PageID 65. Any doubt about the applicability of Part V could be promptly resolved by looking at the first line of that Part, which provides that the triggering size for pesticides used for "Mosquitoes and Other Insect Pests" is "6400 acres of treatment area." R. 29-9, PageID 1421.

TASD's further suggestion that Cooper was required to explain the scope of Part V so as to help TASD understand "the definition of 'treatment area' as that term was used in the 2011 Permit," Appellee Br. at 7, is without merit. Under the applicable regulations, the notice must "include sufficient information to permit the recipient to identify the specific standard, limitation,

9

or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. § 135.3(a). TASD cannot identify any textual basis for imposing an additional requirement that a putative plaintiff explain to the regulated entity the scope of its own regulatory obligations. We decline to adopt this atextual reading.

## IV.

For all these reasons, we **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

**KETHLEDGE, Circuit Judge, concurring.** I agree that Cooper's notice provided the "date or dates" of the District's alleged violations. I write briefly to add the following observation. Citizen suits must "strict[ly] compl[y] with statutory conditions precedent to suit." *Hallstrom v. Tillamook Cty.*, 493 U.S. 2, 28 (1989). Before filing suit under the Clean Water Act, a plaintiff must provide notice of the alleged violation, "given in such manner" as prescribed by regulation. 33 U.S.C. § 1365(b). The regulation requires that the notice provide, among other things, "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated." 40 C.F.R. § 135.3(a). Thus the question here is whether Cooper's notice enabled the District to identify its alleged violations and thereby to choose to come into compliance with the law. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987). Cooper's notice did that: the notice informed the District that it is a "large-volume-chemical-pesticide polluter" and therefore must "publish a detailed Pesticide Discharge Management Plan"; that it "must provide information on each treatment area to which pesticides are discharged"; and that it "must take reasonable steps to minimize or prevent any discharge in violation of [its] permit[.]" R. 13-2 at Page ID 65. The notice also makes reasonably clear that the District was not then doing any of these things. Those allegations constituted the legal basis for Cooper's suit, and thus the notice was sufficient.