

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-30-2007

# Willis v. Roche

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4179

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Willis v. Roche" (2007). *2007 Decisions*. Paper 172.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/172

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4179
_____

CHARLES L. WILLIS,

Appellant

v.

JAMES G. ROCHE, SECRETARY, DEPARTMENT OF AIR FORCE

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 05-cv-00113)
District Judge: Hon. John R. Padova

Submitted Under Third Circuit LAR 34.1(a)
November 8, 2006

Before: SLOVITER, CHAGARES, and GREENBERG, Circuit Judges.

_____

(Filed November 30, 2007)

OPINION OF THE COURT

CHAGARES, Circuit Judge.

Plaintiff/appellant Charles Willis sued his employer, the United States Air Force, alleging retaliation and discrimination on the basis of race and gender in violation of Title VII. Defendant/appellee James Roche, the Secretary of the Air Force, moved to dismiss Willis' complaint pursuant to Fed. R. Civ. P. 12(b)(1), arguing that Willis' claims were barred by the doctrine of intra-military immunity, more commonly known as the Feres doctrine. The District Court agreed and dismissed Willis' complaint. We conclude that Willis' claims are barred by the Feres doctrine, and will therefore affirm.

## I.

Willis, a black male, is a civilian employee of the United States Air Force. At all pertinent times, Willis has been stationed at the Willow Grove Air Reserve Station in Willow Grove, Pennsylvania. Willis is an Air Reserve Technician (ART) and Chief of the Relocation, Employment, and Training Subdivision, a branch of the Military Personnel Flight Division. In his capacity as head of this subdivision, Willis is a GS-11 level employee and supervises six people. As a condition of his employment, Willis is required to be a member of the military reserves. Willis' direct supervisor, Lt. Col. Jerald Uber, and his second level supervisor, Lt. Col. Kay Long, are both on active military duty.

In his complaint, Willis alleges that Lt. Col. Uber subjected him to a variety of actions that constituted racial and gender-based discrimination. On August 1, 1997, Willis filed a formal charge of discrimination with the appropriate agency, the Air Force Review Board. Willis also filed a second discrimination charge on December 12, 1997.

2

These charges were consolidated, and the parties attended a hearing before an EEOC administrative judge. The administrative judge determined that there was insufficient evidence to support Willis' claims of discrimination, and the Air Force Review Board adopted the administrative law judge's findings.

Thereafter, Willis filed suit in federal court, and the District Court dismissed his complaint pursuant to Rule 12(b)(1). This appeal followed.

## II.

We exercise plenary review over the District Court's dismissal of this action under Rule 12(b)(1). In re Cybergenics Corp., 226 F.3d 237, 239 (3d Cir. 2000). "Because the government's challenge to the District Court's jurisdiction was a factual one under Fed. R. Civ. P. 12(b)(1), we are not confined to the allegations in the complaint (nor was the District Court) and can look beyond the pleadings . . . ." Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000). As the plaintiff, Willis bears the burden to show that his claims are not barred by the Feres doctrine. See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002).

## III.

### A.

Willis' claims arise under 42 U.S.C. 2000e-16(a), which, inter alia, prohibits military departments from engaging in employment discrimination. It is undisputed that

Willis is an employee of a military department. See 5 U.S.C. § 102 (defining "military department" to include the Department of the Air Force).

The doctrine of intra-military immunity, first recognized in Feres v. United States, 340 U.S. 135 (1950), however, sharply limits the scope of military department employees who may seek relief under § 2000e-16(a). The issue in this case is whether Willis' claims are barred by the so-called Feres doctrine.

In Feres, the Supreme Court held that uniformed members of the armed forces may not bring suit against the federal government under the Federal Tort Claims Act (FTCA) for injuries that "arise out of or are in the course of activity incident to service." Id. at 146. This holding was based on "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the [FTCA] were allowed for negligent orders given or negligent acts committed in the course of military duty. . . ." United States v. Brown, 348 U.S. 110, 112 (1954).

The intra-military immunity doctrine has been extended well beyond its original application to FTCA claims by active duty military personnel, and now applies to a broad array of constitutional and statutory claims by active duty and non-active duty military personnel alike. For example, in Chappell v. Wallace, 462 U.S. 296 (1983), the Supreme Court considered claims of race discrimination brought by five enlisted men serving in the United States Navy against their supervisors, under Bivens v. Six Unknown Named

4

<u>Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). The Court held that the enlisted men could not maintain their lawsuit. Relying upon the <u>Feres</u> doctrine and its underlying rationale, the Court explained "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers. . . ." <u>Chappell</u>, 462 U.S. at 300.

Apparently, every court of appeals considering the issue has held that the <u>Feres</u> doctrine bars uniformed military personnel from bringing discrimination claims under Title VII and other discrimination statutes. <u>See, e.g.</u>, <u>Stinson v. Hornsby</u>, 821 F.2d 1537, 1541 (11th Cir. 1987) (holding that the <u>Feres</u> doctrine bars Title VII claims by military personnel on active duty); <u>Roper v. Dep't of the Army</u>, 832 F.2d 247, 248 (2d Cir. 1987) (same); <u>Gonzalez v. Dep't of the Army</u>, 718 F.2d 926, 929-30 (9th Cir. 1983) (same); <u>Johnson v. Alexander</u>, 572 F.2d 1219, 1222-23 (8th Cir. 1978) (same); <u>see</u> <u>also</u> <u>Doe v. Garrett</u>, 903 F.2d 1455, 1461-62 (11th Cir. 1990) (holding that Rehabilitation Act claims by active duty military personnel are barred); <u>Baldwin v. United States Army</u>, 223 F.3d 100, 101 (2d Cir. 2000) ("As with Title VII and the ADEA, there is no indication that the remedies provided in the ADA were to be extended to uniformed members of the military.").

Recently, in <u>Matreale v. New Jersey Dep't of Military & Veterans Affairs</u>,

487 F.3d 150 (3d Cir. 2007), our court considered whether the Feres doctrine barred employment discrimination claims by a member of the New Jersey Army National Guard under the New Jersey Law Against Discrimination.  We decided that the Feres doctrine did bar such employment discrimination claims and noted:

> Without exception, in other post- Feres cases, the Court has adhered to the compelling necessity of maintaining military discipline as the basis for expanding the intra-military immunity doctrine to encompass a variety of claims, against an assortment of defendants, brought by a range of servicemen, for injuries arising out of, or in the course of activity incident to, military service.

Id. at 153.

The analysis is less straightforward in cases where, as here, the plaintiff is not on active military duty, but instead holds a position requiring performance of both military and civilian job duties.  As a "military technician," the hybrid nature of Wills' job is explicitly noted by statute.  See 10 U.S.C. § 10216(d).[1]  Willis' role and responsibilities as

---

[1]Congress defined "military technician" as follows:

For purposes of this section and any other provision of law, a military technician (dual status) is a Federal civilian employee who—

. . .

(B) is required as a condition of that employment to maintain membership in the Selected Reserve;

. . .

(2) Military technicians (dual status) shall be authorized and accounted for as a separate category of civilian employees.

an ART[2] further confirm that his job is neither fish (totally civilian) nor fowl (totally military). The question, then, is whether the military aspects of Willis' job as an ART preclude him from asserting his claims of discrimination.

B.

Courts of appeals that have addressed this question have uniformly held that, at a minimum, Feres precludes claims by hybrid employees if their claims arise in whole or in part out of the military aspects of the claimant's job. See, e.g., Luckett, 290 F.3d at 499 (2d Cir. 2002); Brown v. United States, 227 F.3d 295, 298-99 (5th Cir. 2000); Mier v. Owens, 57 F.3d 747, 750-51 (9th Cir. 1995); see also Fisher v. Peters, 249 F.3d 433, 443 (6th Cir. 2001) (holding that discrimination claims by hybrid employees are "irreducibly

---

[2]ARTs are defined as:

Full time civilian employees who are also members of the Air Force unit in which they are employed. In addition to their civilian assignments, they are assigned to equivalent positions in the Reserve organization with a Reserve military rank or grade. ARTs must maintain active membership in their Reserve unit of assignment and keep satisfactory participation in order to keep their ART position.

Appendix (App.) 66.

The role of an ART is:

To provide stable, continuous, full-time management, administration, and training of the Ready Reserve and [oversee] the transition from a peacetime to a wartime or national emergency situation to ensure mobilization readiness is maintained. ARTs train reservists, provide continuity within the Reserve unit of assignment, and support the unit's gaining major command.

App. 62.

7

military in nature," and therefore non-justiciable).  We agree with our sister courts of appeals and, therefore, we must determine whether Willis' discrimination claims arise "purely from [his] ART[] civilian position  . . . ."  Brown, 227 F.3d at 299.

In this case, it is clear that Willis' claims do not arise purely from the civilian aspects of his job as an ART.  All of Willis' claims arise out of his relationship with Uber, who is Willis' supervisor in both his military and civilian capacities.  It therefore would be difficult, if not impossible, to partition Willis' relationship with Uber into civilian and military components.[3]  As a result, "[a]ny attempt surgically to dissect and analyze the civilian relationship between [Willis and Uber], with its military dimensions, . . . would itself threaten to intrude into their military relationship."  Overton v. New York State Div. of Military and Naval Affairs, 373 F.3d 83, 96 (2d Cir. 2004).  See Wright v. Park, 5 F.3d 586, 591 (1st Cir. 1993) (dismissing § 1983 claim on Feres grounds, noting that "a technician's dual roles are too tightly imbricated to be pried apart at a litigant's whim").

An affidavit submitted Master Sergeant Timothy A. Martin further demonstrates that any effort to segregate the military and civilian aspects of Willis' relationship with Uber would be futile.  Martin's affidavit supports the government's contention that the circumstances giving rise to several of Willis' claims did not arise exclusively within the

---

[3]Indeed, Willis does not even suggest how we could do so.

8

civilian aspects of his employment. We discuss the allegations mentioned in the Martin affidavit in the order in which they are listed in the complaint.

Willis first alleges that Uber discriminated against him by requesting personal and privileged information. Martin states in his affidavit that Uber's request arose in the military context, as Uber sought information regarding Willis' residence to determine whether Willis was entitled to travel pay in either his civilian or his military capacity, or whether such pay was limited to travel in connection with Willis' military reserve status.

Willis also alleges that Uber improperly removed him as the Test Control Officer from the Career Development Course. Martin states in his affidavit that the Career Development Course is a military—not civilian—training requirement, and that the purpose of this training is to provide individual service members with the skills and knowledge to perform their duties effectively.

With respect to Willis' allegation that Uber illegally discriminated against him regarding his 5 skill level proficiency, Martin's affidavit states that skill level proficiencies are military—not civilian—designations which refer to the performance level at which the holder can accomplish his or her duties in the Air Force Specialty Code or career field.

Willis also alleges that Uber discriminated against him by placing a letter of reprimand in the form of an Unfavorable Information File into the computerized military personnel system without cause. In his affidavit, Martin states that an Unfavorable

9

Information File is an official record of censures that a military member has received for deficient performance. Martin also notes that unlike military employees, civilian employees do not have Unfavorable Information Files.

Willis also alleges that Uber discriminated against him by removing him from his office and placing him among his subordinates as a working supervisor. According to Martin, Willis' removal and change of position was the result of a restructuring of the Military Personnel Flight at the direction of Air Force Reserve Command. As the District Court properly concluded, this decision to reorganize is "integrally related to the military's unique structure," and is therefore non-justiciable. 6A, 27A-30A; Cf. Mier, 57 F.3d at 750-51 (barring discrimination and retaliation claims arising out of military's decision not to promote plaintiff).

Given the nature of the relationship between Willis and Uber, and given Willis' failure to offer any evidence to contradict Martin's affidavit, we conclude that the circumstances about which Willis complains did not arise wholly in the context of the civilian aspects of his employment. Accordingly, Willis has failed to carry his burden to show that his claims are justiciable, and they must therefore be dismissed.

IV.

For the foregoing reasons, we will affirm the District Court's decision in all respects.