*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JAIMI L. BOWERS,

        *Plaintiff-Appellant,*

    *v.*

Honorable MICHAEL W. WYNNE, Secretary of
the Air Force,

        *Defendant-Appellee.*

No. 09-3566

_____

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 08-02095—John R. Adams, District Judge.

Argued: March 4, 2010

Decided and Filed: July 21, 2010

Before: SILER and ROGERS, Circuit Judges; BELL, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Geoffrey P. Damon, BUTKOVICH & CROSTHWAITE CO., LPA, Cincinnati, Ohio, for Appellant. Lisa Hammond Johnson, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Geoffrey P. Damon, BUTKOVICH & CROSTHWAITE CO., LPA, Cincinnati, Ohio, for Appellant. Lisa Hammond Johnson, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

    BELL, J., delivered the opinion of the court, in which SILER, J., joined. ROGERS, J. (pp. 20-22), delivered a separate opinion concurring in the result.

_____

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

---

**OPINION**

---

BELL, District Judge.  In this action alleging gender and disability discrimination as well as retaliatory termination, Plaintiff-Appellant Jaimi L. Bowers ("Bowers") appeals the district court's order dismissing her complaint.  For the reasons that follow, we affirm the decision of the district court.

## I. BACKGROUND

During the relevant time period, Bowers worked at the Youngstown Air Reserve Station as a Logistics Support Specialist in the Logistics Readiness Squadron, 910th Maintenance Support Group.  As an Air Reserve Technician ("ART"), she was a federal civilian employee of the Air Force, but she held the military rank of Staff Sergeant and was required, as a condition of her employment, to maintain membership in the Air Force Reserve.  Bowers alleges that she suffers from several emotional and medical disorders, including anxiety, depression, gastroesophageal reflux disease, and gastritis.  She alleges that Major Dawn Sturdevant, her supervisor, and Major Ronald Coburn interfered with the grant of a security clearance and "went beyond the normal requirements" in requiring her to substantiate her medical disabilities.  (R. at 4.)  She asserts that "Defendant Secretary Michael W. Wynne, acting through Major Sturdevant and Major Coburn, acted maliciously by disregarding Ms. Bowers' medical documentation, and by using a pretext regarding the processing of a security clearance, to discharge Ms. Bowers."  (*Id*. at 5.)  Bowers filed a fraud, waste, and abuse complaint alleging that Major Sturdevant was forging signatures on performance recommendations and engaging in "abuse of power and conduct unbecoming an officer, particularly fraternization with enlisted."  (*Id.* at 115, 116.)  Bowers was terminated from her position on August 15, 2005.  She contends that she was wrongfully charged with being absent without leave and discharged on the basis of her gender, her disabilities, and in

retaliation for filing the fraud, waste, and abuse complaint. Following a CORE[1] fact-finding proceeding in November of 2007, and a final agency decision in June of 2008, Bowers filed her complaint in United States District Court for the Northern District of Ohio, naming as defendant Defendant-Appellee Michael W. Wynne, the Secretary of the Air Force (the "Secretary"). Bowers's complaint contains three counts: (1) discrimination in violation of the Rehabilitation Act of 1973, (2) unlawful retaliatory discrimination, and (3) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. On February 12, 2009, the Secretary moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that Bowers's claims were barred by the doctrine of *Feres v. United States*, 340 U.S. 135 (1950). On March 31, 2009, the district court granted the Secretary's motion. Bowers now appeals the dismissal of her complaint.

## II.  LAW AND ANALYSIS

### A.  Standard of Review

Because the Secretary attached evidence in support of its motion to dismiss, the parties and the court construed the Secretary's motion as an attack on the factual basis for subject matter jurisdiction. "When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). The Court reviews the district court's application of the law to the facts de novo and its factual determinations for clear error. *Id.* The Court reviews de novo a district court's determination of the applicability of the *Feres* doctrine. *Lovely v. United States*, 570 F.3d 778, 781 (6th Cir. 2009).

---

[1]CORE is an acronym for "Compressed, Orderly, Rapid, Equitable," and it refers to the Air Force's Equal Employment Opportunity dispute resolution procedure. *See* Air Force Instruction 36-1201, Equal Employment Opportunity Complaints (Feb. 12, 2007), available at http://www.adr.af.mil/shared/media/document/AFD-070402-075.pdf.

**B.  *Feres* doctrine**

In *Feres v. United States*, 340 U.S. 135 (1950), the Supreme Court held that military personnel could not pursue claims against the government under the Federal Tort Claims Act for injuries that "arise out of or are in the course of activity incident to service." *Id.* at 146.  Because "the relationship of military personnel to the Government has been governed exclusively by federal law," the Court did not "think that Congress, in drafting this Act, created a new cause of action dependent on local law for service-connected injuries or death due to negligence." *Id.*

Thereafter, the Supreme Court applied the analysis in *Feres* to discrimination claims brought by naval personnel against their superiors pursuant to the *Bivens* doctrine. *Chappell v. Wallace*, 462 U.S. 296, 299 (1983).  The Court explained that "[i]n the last analysis, *Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, [and] the effects on the maintenance of such suits on discipline.'" *Id.* (quoting *United States v. Muniz*, 374 U.S. 150, 162 (1963)).  The Court determined that the "unique disciplinary structure of the military establishment and Congress' activity in the field" constituted "special factors" making it inappropriate to allow a judicially-created remedy. *Id.* at 304.

The Supreme Court reiterated its concern to avoid intrusion into military discipline and military decisionmaking in *United States v. Shearer*, 473 U.S. 52 (1985). In that case, the Court held that the mother of an army private could not pursue a FTCA claim based on the murder of her son by another member of the military. *Id.* at 59.  Her son was off duty and away from his base when he was killed. *Id.* at 53.  The plaintiff alleged that the government was negligent in its supervision and control over the killer. *Id.* at 54.  The Court rejected the appellate court's heavy reliance on the site of the murder and the duty status of the army private when the murder occurred because "the situs of the murder is not nearly as important as whether the suit requires the civilian court to second-guess military decisions and whether the suit might impair essential military discipline." *Id.* at 57 (internal citations omitted).

In *United States v. Johnson*, 481 U.S. 681 (1987), the Supreme Court invoked the military discipline rationale underlying the *Feres* doctrine in a case involving negligence on the part of civilian employees of the government. *Id.* at 683. The plaintiff's husband, a member of the Coast Guard, was killed when his helicopter crashed during a rescue mission. *Id.* at 682-83. The plaintiff alleged that the crash resulted from the negligent actions of civilian radar controllers. *Id.* The Court held that the plaintiff could not pursue her FTCA claim, in part, because:

> [M]ilitary discipline involves not only obedience to orders, but more generally duty and loyalty to one's service and to one's country. Suits brought by service members against the Government for service-related injuries could undermine the commitment essential to effective service and thus have the potential to disrupt military discipline in the broadest sense of the word.

*Id.* at 691. The Court noted that "[c]ivilian employees of the Government also may play an integral role in military activities," and reasoned that, "[e]ven if *military* negligence is not specifically alleged in a tort action, a suit based upon service-related activity necessarily implicates the military judgments and decisions that are inextricably intertwined with the conduct of the military mission." *Id.* at 691 & n.11 (emphasis added). Because the plaintiff's husband was engaged in an activity incident to his service and was acting pursuant to the standard operating procedures of the Coast Guard, the Court determined that "the potential that [the] suit could implicate military discipline is substantial." *Id.* at 691-92.

In *United States v. Stanley*, 483 U.S. 669 (1987), the Supreme Court affirmed the broad "incident to service test" from *Feres*. The plaintiff was a member of the military claiming injury as a result of his participation in a military program designed to test the long-term effects of LSD. *Id.* at 671-72. The plaintiff argued that his case did not involve the sort of chain-of-command issues that were at issue in *Chappell* because he was not acting under orders from superior officers, and because at least some of the defendants were not his superior officers. *Id.* at 679. The Court declined to limit *Feres* to claims by officers against their superiors because even an inquiry into whether a suit

questions "military discipline and decisionmaking would itself require judicial inquiry into, and hence intrusion upon, military matters." *Id.* at 682-83.

This Court extended the analysis in *Feres* and *Chappell* to discrimination claims brought by military personnel pursuant to Title VII and the Rehabilitation Act in *Coffman v. Michigan*, 120 F.3d 57 (6th Cir. 1997). *See id.* at 59 ("Consistent with the reasoning in *Chappell*, courts of appeals have consistently refused to extend statutory remedies available to civilians to uniformed members of the armed forces absent a clear direction from Congress to do so."). By its terms, 42 U.S.C. § 2000e-16(a) applies to all personnel actions affecting "employees" of the "military departments." *Id.* However, "[t]he Equal Employment Opportunity Commission and the circuits that have considered this statute have interpreted it to apply only to suits by civilian employees of the military departments, and not members of the armed forces." *Fisher v. Peters*, 249 F.3d 433, 438 (6th Cir. 2001); *see Brown v. United States*, 227 F.3d 295, 298 n.3 (5th Cir. 2000) (citing cases); 29 C.F.R. § 1614.103(d)(1).

## C. Sixth Circuit Precedent

This Court has never considered claims brought under Title VII or the Rehabilitation Act by an ART. In *Leistiko v. Stone*, 134 F.3d 817 (6th Cir. 1998), the plaintiff alleged that he had been discharged from his position as a National Guard technician in violation of the Rehabilitation Act. *Id.* at 818. Like an ART, a National Guard technician occupies a hybrid civilian/military position. National Guard technicians are federal civilian employees that must, as a condition of their employment, be members of the National Guard. 32 U.S.C. § 709(b)(2); 10 U.S.C. § 10216(a)(1)(B). This Court affirmed the district court's grant of summary judgment in favor of the defendant because "'[e]very court having occasion closely to consider the capacity of National Guard technicians has determined that capacity to be irreducibly military in nature.'" *Leistiko*, 134 F.3d at 821 (quoting *Leistiko v. Sec'y of the Army*, 922 F. Supp. 66, 73 (N.D. Ohio 1996)); *see Wright v. Park*, 5 F.3d 586, 588-89 (1st Cir. 1993) ("[S]ince National Guard technicians' positions are encompassed within a military organization and require the performance of work directly related to national defense,

such positions are themselves military in nature."); *Stauber v. Cline*, 837 F.2d 395, 400 (9th Cir. 1988) (noting that plaintiff and defendant, both National Guard technicians, were always under the command of active-duty military officers, were subject to military discipline, and were performing work "integral to routine military activities"); *NeSmith v. Fulton*, 615 F.2d 196, 201 (5th Cir. 1980) ("Formally, a civilian technician is a federal civil employee outside the competitive civil service. In substance, however, the position is one in a military organization.").**2** This Court has reiterated the holding from *Leistiko* on several occasions. *See, e.g., Brown v. Roche,* 206 F. App'x 430, 432 (6th Cir. 2006) (unpublished); *Fisher v. Peters*, 249 F.3d 433, 439 (6th Cir. 2001).

In *Fisher v. Peters*, the Court considered a Title VII claim by a National Guard technician who alleged that her supervisors had downgraded her performance appraisal and denied her requests for promotion. 249 F.3d at 435-36. In her technician position, the plaintiff was responsible for paying invoices provided to the base and for processing travel vouchers. *Id.* at 434. She was also required to wear a military uniform, observe military courtesies, and participate in unit training activities one weekend per month. *Id.* The Court affirmed a grant of summary judgment in favor of the defendant because the National Guard technician position is irreducibly military in nature:

> In the case at hand, Plaintiff attempts to distinguish *Leistiko* by emphasizing that Leistiko's dismissal from his civilian employment was precipitated by a military decision. While that distinction may be accurate, Plaintiff ignores the unambiguous statements made in *Leistiko* that the positions of National Guard technicians are "irreducibly military in nature." In affirming the grant of summary judgment, this court did not discuss the facts of the underlying employment action taken which precipitated the suit. Rather, we simply confirmed that National Guard technician positions are irreducibly military in nature and that the Rehabilitation Act does not apply to hybrid positions that are irreducibly military in nature.

---

**2**The Fifth Circuit eschews this Court's "categorical" approach to Title VII claims by dual-status technicians, and distinguishes the First Circuit's opinion in *Wright* and its own decision in *NeSmith* because those cases involved 42 U.S.C. § 1983 claims. *Brown v. United States*, 227 F.3d 295, 299 n.4 (5th Cir. 2000). According to *Brown*, "[i]n Title VII cases, as opposed to 42 U.S.C. § 1983 cases, we are required to differentiate the civilian and military positions associated with a dual-status job. This is because Title VII specifically provides for claims against the government for civilian employees in the military departments." *Id.* Notwithstanding the distinction noted in *Brown*, the conclusion in *Wright* has been accepted by this Court and applied to Title VII claims.

*Id.* at 439.

In the case before the Court, the district court determined that *Fisher* was controlling because the court could not discern any distinction between an ART and a National Guard technician. On appeal, Bowers contends that ARTs and National Guard technicians are governed by different statutes and that, unlike National Guard technicians, ARTs are not statutorily required to wear a uniform while performing their civilian functions. *See* 32 U.S.C. § 709(b) (requiring National Guard technicians to "wear the uniform appropriate for the member's grade and component of the armed forces" while "performing duties as a military technician (dual status)").[3]

Courts in some other circuits take a different approach to analyzing Title VII or Rehabilitation Act claims by dual status technicians. *See Fisher*, 249 F.3d at 440-43. Those courts consider the nature of the technician's claim or the challenged conduct. *Id.* For example, in the Ninth Circuit, dual status technicians are barred from bringing claims where "the challenged conduct is integrally related to the military's unique structure." *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995). In the Fifth Circuit, only claims "arising purely" from the employee's civilian status may be brought. *Brown v. United States*, 227 F.3d 295, 299 (5th Cir. 2000). If the claim is difficult to characterize, the court will consider whether the conduct at issue is "integrally related to the military's unique structure." *Id.* at 299 n.5. The Second and Third Circuits have adopted the approach used in the Fifth Circuit. *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 95 (2d Cir. 2004); *Luckett v. Bure*, 290 F.3d 493, 499 (2d Cir. 2002); *Willis v. Roche*, 256 F. App'x 534, 537 (3d Cir. 2007) (unpublished).

In *Fisher*, this Court determined in the alternative that, even if the plaintiff's position was not military in nature, her claims were "in the military sphere" because she

---

[3]Though not dispositive in this matter, it appears that the Air Force changed its rules in August of 2007 to require ARTs to wear uniforms while performing their civilian duties. *See* Air Force Instruction 36-703, Civilian Conduct and Responsibility ¶ A.7 (Feb. 17, 2009) ("Air Reserve Technicians will adhere to the requirements as those prescribed in AFI 36-2903, Dress and Personal Appearance of Air Force Personnel, when wearing the military uniform in civilian status."); Air Force Print News Today, Rules change to require technicians to wear uniforms fulltime (Aug. 8, 2007), http://www.af.mil/news/story.asp?id=123063842.

challenged a performance appraisal during a period in which her supervisors were military officers who supervised her in both her military and civilian roles, and because the positions to which she was denied promotion had military components with military qualifications. *Fisher v. Peters*, 249 F.3d 433, 443-44 (6th Cir. 2001).

In the instant case, the district court determined, in the alternative, that Bowers's claims were military in nature because it was not disputed that Bowers's claims involved the conduct of individuals that supervised her in both her civilian and military capacities.[4] The district court also noted that Bowers alleged that she was terminated in retaliation for filing a fraud, waste, and abuse complaint, which involved military matters because it included allegations that Major Sturdevant "engaged in conduct unbecoming an officer and improperly engaged in fraternization." (R. at 117.)

**D. ARTs**

Following the Court's approach in *Fisher*, at issue is whether an ART constitutes a civilian employee or a member of the armed forces. *See Fisher*, 249 F.3d at 438. ARTs are defined as:

> Full-time civilian employees who are also members of the Air Force Reserve unit in which they are employed. In addition to their civilian assignments, they are assigned to equivalent positions in the Reserve organization with a Reserve military rank or grade. ARTs must maintain active membership in their Reserve unit of assignment and satisfactory participation in order to keep their ART position.

(R. at 114, Air Force Instruction 36-108, Air Reserve Technician (ART) Program (July 29, 1994), Attachment 1, at 5.) The ART and National Guard technician positions are both subject to 10 U.S.C. § 10216(a)(1), which provides:

> For purposes of this section and any other provision of law, a military technician (dual status) is a Federal civilian employee who--

---

[4] The Secretary asserted in its brief in support of the motion to dismiss that Majors Coburn and Sturdevant supervised Bowers in both her civilian and military capacities. Bowers did not respond to this contention in her response to the motion to dismiss. On appeal, Bowers contends that Majors Coburn and Sturdevant supervised her only in her civilian capacity.

(A) is employed under section 3101 of title 5 or section 709(b) of title 32;

(B) is required as a condition of that employment to maintain membership in the Selected Reserve; and

(C) is assigned to a civilian position as a technician in the organizing, administering, instructing, or training of the Selected Reserve or in the maintenance and repair of supplies or equipment issued to the Selected Reserve or the armed forces.

*Id.* The position of National Guard technician has a different history than the ART position. Congress enacted the National Guard Technicians Act of 1968, as amended, 32 U.S.C. § 709, to regulate National Guard technicians, whereas the ART position is subject to the general employment authority of the military departments in 5 U.S.C. § 3101. One of the authorities cited by the district court in *Leistiko* for the proposition that a National Guard technician position is "irreducibly military in nature" examined the intent of Congress in defining that position, as set forth in the National Guard Technicians Act. *See Wright v. Park*, 5 F.3d 586 (1st Cir. 1993). That analysis is summarized as follows:

> Appellant, who remains a colonel in the [Air National Guard], argues strenuously that, for purposes of this case, his civilian status may be disentangled from his military status, and that he should be free to sue for discrimination implicating the former. But this balkanization of technicians' work is belied by Congress's description of the functions that ANG technicians serve, by the unmistakable intendment of the Technician Act (the statute that Congress enacted in 1968 to regulate such personnel), and by the resulting ties that bind technicians' civilian and military roles.
>
> [T]he Technician Act evidences Congress's intention that technicians, while retaining their positions as civil employees outside the competitive civil service, will serve simultaneously as employees of the appropriate military department, subject to its regulation.
>
> It is axiomatic that the National Guard is military in character. . . . We think it follows that technicians are martial in character. Indeed, under the Technician Act's composite regime, technicians are considerably more than nominal members of the military establishment. . . . Because National Guard technicians *serve as the Guard's support staff and are, in fact, those whose job it is to maintain and assure the Guard's strength and organization, they are indispensable to this nation's defense. See,*

*e.g.*, 32 U.S.C. § 709(a) (assigning to technicians such distinctively military tasks as "(1) the administration and training of the National Guard; and (2) the maintenance and repair of supplies issued to the National Guard or the armed forces"). . . .

[S]ince National Guard technicians' positions are *encompassed within a military organization and require the performance of work directly related to national defense, such positions are themselves military in nature*.

*Id.* at 588-89 (emphasis added). The reasoning in *Wright* readily applies to the ART position. Like National Guard technicians, ARTs are encompassed within a military organization and require the performance of work directly related to national defense.

The functions performed by ARTs and National Guard technicians, as described in the applicable statutes, are substantially the same. The "distinctively military tasks" noted by *Wright* in the National Guard Technicians Act, 32 U.S.C. § 709(a)(1) - (2), are duplicated in 10 U.S.C. § 10216(a)(1)(C), where they are applicable to both National Guard technicians and ARTs. *See id.* (indicating that dual status technicians, including ARTs employed under 5 U.S.C. § 3101 and National Guard technicians employed under 32 U.S.C. § 709(b), may be assigned to "organizing, administering, instructing, or training of the Selected Reserve or in the maintenance and repair of supplies or equipment issued to the Selected Reserve or the armed forces"). The National Guard Technicians Act also provides that National Guard technicians may be called to perform the following "additional duties":

> (A) Support of operations or missions undertaken by the technician's unit at the request of the President or the Secretary of Defense.
>
> (B) Support of Federal training operations or Federal training missions assigned in whole or in part to the technician's unit.
>
> (C) Instructing or training in the United States or the Commonwealth of Puerto Rico or possessions of the United States of--
>
>> (i) active-duty members of the armed forces;

> (ii) members of foreign military forces (under the same authorities and restrictions applicable to active-duty members providing such instruction or training);
>
> (iii) Department of Defense contractor personnel; or
>
> (iv) Department of Defense civilian employees.

32 U.S.C. § 709(a)(3). Similarly, 10 U.S.C. § 10216(a)(3) provides that dual status technicians employed under 5 U.S.C. § 3101 may be assigned the following "additional duties":

> (A) Supporting operations or missions assigned in whole or in part to the technician's unit.
>
> (B) Supporting operations or missions performed or to be performed by--
>
>> (i) a unit composed of elements from more than one component of the technician's armed force; or
>>
>> (ii) a joint forces unit that includes--
>>
>>> (I) one or more units of the technician's component; or
>>>
>>> (II) a member of the technician's component whose reserve component assignment is in a position in an element of the joint forces unit.
>
> (C) Instructing or training in the United States or the Commonwealth of Puerto Rico or possessions of the United States of--
>
>> (i) active-duty members of the armed forces;
>>
>> (ii) members of foreign military forces (under the same authorities and restrictions applicable to active-duty members providing such instruction or training);
>>
>> (iii) Department of Defense contractor personnel; or
>>
>> (iv) Department of Defense civilian employees.

10 U.S.C. § 10216(a)(3).

Furthermore, ARTs fulfill a uniquely military function, even in their civilian capacity, to ensure the combat readiness of the reserve units in which they are employed:

> The ART workforce provides stable, continuous full-time management, administration, and training of the Ready Reserve and oversees the transition from peacetime to a wartime or national emergency situation to ensure mobilization readiness is maintained. ARTs train reservists, provide continuity within the Reserve unit of assignment, and support the unit's gaining major command.

(R. at 110, Air Force Instruction 36-108 (July 26, 1994).); *see* 10 U.S.C. § 10216(d)(1) (requiring ARTs and other dual status technicians to maintain membership in the unit in which they are employed or that they are employed to support). The history of the ART position provides additional context:

> In a letter dated June 25, 1957, the Civil Service Commission (CSC) authorized the Air Force to proceed with its Air Reserve Technician plan (hereinafter ART). The primary goal of the plan was to increase the combat readiness of Air Force Reserve units, as well as their effectiveness in the event of mobilization. Prior to ART, the Air Reserve Flying Centers utilized for training Air Reserve Wings were maintained and operated by Air Force units which were composed of approximately half military and half civilian personnel and were organizationally separate from the reserve wings. ART, by replacing military support personnel with civil servants and requiring civilian support personnel to be active reserve members, in effect integrated the support organizations into the Air Reserve Wings. In their civilian capacity, ART incumbents were to provide the basic maintenance and supply functions previously provided by the support organization; in their military capacity, ART employees were to provide training for the remainder of the wing personnel, who reported only on weekends and during summer active duty tours. Since this "hard core" of highly skilled reservists would be available for immediate mobilization, the Air Force anticipated that combat readiness would be enhanced.

*Am. Fed'n of Gov't Employees v. Hoffman*, 543 F.2d 930, 932-33 (D.C. Cir. 1976). *Hoffman* explains the importance of dual status technicians to ensuring the combat readiness of their unit:

> Technicians are an integral part of the Army Reserve and they possess certain skills essential to the unit if it should be called to active duty.

> Since the transition from a Reserve status to active duty is critical, dual status personnel, who have been working for the unit and are familiar with unit administrative requirements are employed when the unit is mobilized to enable the critical functions to be performed effectively. When a substitute must replace a technician who does not accompany his unit, the function performed will suffer in some degree.

*Id.* at 939. In other words, an ART is not merely a civilian employee that occupies a separate military position in the reserve forces. Instead, the ART's civilian duties and military role are intricately entwined. The civilian aspect of the ART position exists to serve the ART's military role and the military capacity of the ART's unit. It follows, then, that an adverse personnel decision regarding an ART, even if that decision is related solely to the ART's nominally civilian role, necessarily implicates the ART's military role and function. *Cf. Wright v. Park*, 5 F.3d 586, 589 (1st Cir. 1993) (observing that because "the [National Guard] technician's several roles are inextricably intertwined, it follows that the adverse employment action . . . necessarily implicates his military as well as his civilian status." ).

Bowers contends that the district court should have considered that, unlike National Guard technicians, ARTs are not required to wear uniforms while performing their civilian duties, ARTs are subject to civil service laws and regulations applicable to the competitive civil service, and ARTs receive separate military and civilian pay. *See Hoffman*, 543 F.2d at 933 n.3, 942-43 (noting that "the CSC has provided for separation of ART employees' civilian and military functions to the extent practicable").

Bowers argues that the uniform requirement is an important distinction because the EEOC regulations implementing Title VII specifically exclude "*[u]niformed* members of the military departments." 29 C.F.R. § 1614.103(d)(1) (emphasis added). However, the Court interprets the EEOC regulations to refer to the nature of the position rather than an individual's state of dress. There is no dispute that ARTs are "uniformed members of the military departments" in their capacity as members of the reserve forces. *See Roper v. Dep't of Army*, 832 F.2d 247, 248 (2d Cir. 1987) (determining that Title VII does not apply to a member of the Army Reserve). Notwithstanding the benefits of civilian status that are enjoyed by ARTs, but not National Guard technicians, including

the absence of a statutory requirement to wear a uniform when performing civilian duties, and the protections available to employees of the competitive civil service, ARTs hold a military rank in a military organization and perform work that is essential to the military capacity of that organization.  *See* 10 U.S.C. § 10216.  The distinctions identified by Bowers do not materially diminish the military nature of the relationship between an ART and the unit that she is employed to support, or the irreducibly military nature of the ART position as a whole.

Bowers cites *McGinnis v. United States Air Force*, 266 F. Supp. 2d 748 (S.D. Ohio 2003), as evidence that there is nothing intrinsically military about the Logistics Management Specialist position.  In that case, individuals that had been employed by the United States Air Force as Logistics Management Specialists alleged that the Air Force had engaged in discriminatory practices in violation of Title VII. *Id.*  However, the court discussed the plaintiffs' claims without examining whether they might be barred because of the military status of the plaintiffs.  Moreover, there is no indication that the plaintiffs in *McGinnis* were anything other than strictly civilian employees of the Air Force. Whatever may be the case for other types of military technicians, dual status technicians are assigned a military rank and serve a distinctly military role in the units that they support. *See* 10 U.S.C. §§ 10216(a), (d).  When this Court reiterated in *Fisher* that the capacity of a National Guard technician is irreducibly military in nature, it did not question whether the particular tasks performed by the plaintiff in that case, an Accounting Technician, were more or less intrinsically military; instead, it held that the position of National Guard technician, as a whole, is irreducibly military in nature.  *See Fisher v. Peters*, 249 F.3d 433, 443 (6th Cir. 2001).

The Court's determination is supported by the case law.  Though other circuits take a different approach to Title VII claims by dual status technicians, they have consistently identified a military nexus sufficient to bar such claims. *See, e.g., Williams v. Wynne*, 533 F.3d 360, 368 (5th Cir. 2008) (ART tested positive for cocaine use while on military status and the decision to discharge him as a result was, therefore, a military personnel management decision); *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289,

292 (5th Cir. 2008) (National Guard technician discharged from his military position in the Texas Air National Guard); *Willis v. Roche*, 256 F. App'x 534, 537 (3d Cir. 2007) (ART challenged conduct by an officer supervising him in both his military and civilian capacities); *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 96 (2d Cir. 2004) (National Guard technician alleged misconduct by his supervisor, who was his immediate military superior, occurring while plaintiff was working on a military base, in military uniform, to ensure the military's airlift capacity); *Luckett v. Bure*, 290 F.3d 493, 499 (2d Cir. 2002) (dual status technician transferred out of his position in the reserve forces by his military supervisors); *Brown v. United States*, 227 F.3d 295, 299 (5th Cir. 2000) (ART discharged for failure to maintain his position in the reserve forces); *Hupp v. U.S. Dep't of the Army*, 144 F.3d 1144, 1148 (8th Cir. 1998) (plaintiff denied a National Guard technician position through an application process involving consideration of military qualifications); *Mier v. Owens*, 57 F.3d 747, 748 (9th Cir. 1995) (National Guard technician failed to receive a military promotion).

Even under the tests used in other circuits, Bowers's claims are barred. In response to the Secretary's motion, Bowers did not dispute or otherwise respond to the contention that Majors Sturdevant and Coburn supervised in both her military and civilian capacities. *See Fisher v. Peters*, 249 F.3d 433, 443-44 (noting that the plaintiff challenged conduct by supervisors who reviewed her in both her military and civilian positions); *Willis v. Roche*, 256 F. App'x 534, 537 (3d Cir. 2007) (noting that the ART challenged conduct by an officer supervising him in both his military and civilian capacities).

Bowers contends on appeal that Majors Sturdevant and Coburn did not supervise her in her military capacity and were not in her military side chain of command; however, it is not disputed that she held a military rank in her reserve unit, and that her claims challenge the conduct of superior military officers serving at the same military station, if not within the same unit, in a direct supervisory capacity. Thus, any investigation into the allegedly discriminatory and retaliatory actions by these officers necessarily threatens an intrusion into officer-subordinate relationships and the "unique

structure" of the military establishment.  *See Mier*, 57 F.3d at 749-50 ("Military personnel cannot sue superior officers to recover damages for alleged constitutional violations because the 'relationship between enlisted military personnel and their superior officers . . . is at the heart of the necessarily unique structure of the Military Establishment.'" (quoting *Chappell v. Wallace*, 462 U.S. 296, 300, 305 (1983))); *cf. Overton*, 373 F.3d at 96 ("Any attempt surgically to dissect and analyze the civilian relationship between Overton and Fletcher, with its military dimensions, moreover, would itself threaten to intrude into their military relationship.").

Bowers urges the Court to follow the Federal Circuit's analysis in *Jentoft v. United States*, 450 F.3d 1342 (Fed. Cir. 2006).  In that case, a National Guard technician alleged that she had been discriminated against in violation of the Equal Pay Act, 29 U.S.C. § 206(d).  *Jentoft*, 450 F.3d at 1343.  That statute applies to "employees," a term that includes a person employed "as a civilian in the military departments." 29 U.S.C. § 203(e)(2)(A)(i).  The Court of Appeals for the Federal Circuit allowed her claim to proceed based on its reading of 10 U.S.C. § 10216(a)(1), which provides, in relevant part:

> For purposes of this section *and any other provision of law*, a military technician (dual status) is a Federal civilian employee who--
>
> (A) is employed under section 3101 of title 5 or section 709(b) of title 32;
>
> (B) is required as a condition of that employment to maintain membership in the Selected Reserve; and
>
> (C) is assigned to a civilian position as a technician in the organizing, administering, instructing, or training of the Selected Reserve or in the maintenance and repair of supplies or equipment issued to the Selected Reserve or the armed forces.

*Id.* (emphasis added).  The court reasoned that "there is no language in § 10216(a) limiting the circumstances in which a dual status technician can be considered a federal civilian employee."  *Jentoft*, 450 F.3d at 1348.  The court distinguished this Court's decision in *Fisher* because *Fisher* did not consider the language in § 10216(a). *Id.* at 1349.

In two separate opinions, the Fifth Circuit has rejected the holding in *Jentoft* as applied to Title VII claims by National Guard technicians and ARTs.   In *Walch v. Adjutant General's Department of Texas*, 533 F.3d 289 (5th Cir. 2008), the Fifth Circuit noted that the enactment and amendment of § 10216 in 1996-97 did not change the status of National Guard technicians; they were already civilian employees under the National Guard Technicians Act. *Id.* at 299-300.  In a separate case involving an ART, the Fifth Circuit concluded:

> Title VII claims arising from an ART's military status constitute an impermissible "intrusion into military personnel decisions."  Nothing in the legislative history of § 10216(a)(1)(B) suggests that Congress intended to intrude on such military personnel decisions. Adopting the rule implied by appellant's distinction would create an absolute right of ARTs, as dual status employees, to assert Title VII claims against the Air Force, even for claims arising from events falling wholly within "the military sphere." Section 10216(a) does not countenance this result, and based on [the Fifth Circuit's earlier decision in] *Brown* we reject it.

*Williams v. Wynne*, 533 F.3d 360, 367 (5th Cir. 2008) (citations omitted); *see also Zuress v. Donley*, 606 F.3d 1249, 1255 (9th Cir. 2010) (disagreeing with *Jentoft* and noting that "[t]here is no mention of Title VII in the legislative history of the 1997 Amendments [to § 10216(a)], nor is there any indication that Congress intended to authorize any cause of action that was previously unavailable to a dual status technician").

The Court declines to follow *Jentoft* in this case.  First, the Court notes that *Jentoft* is distinguishable because it involved a claim under the Equal Pay Act.  Whether that act should be interpreted to allow claims by dual status technicians is not before the Court.

Second, as applied to Title VII claims, the reasoning in *Jentoft* is not persuasive. In its previous cases, the Court acknowledged, along with every other circuit that has considered claims by dual status technicians, that National Guard technicians occupy a position with a civilian component. *Fisher v. Peters*, 249 F.3d 433, 438 (6th Cir. 2001); *see also Brown v. Roche*, 206 F. App'x 430, 431 (6th Cir. 2006) (unpublished) (citing

10 U.S.C. § 10216).  But § 10216(a)(1) does not end with the statement that dual status technicians are federal civilian employees.  It states that National Guard technicians and ARTs are "dual status" employees because they are federal civilian employees *and* members of the reserve forces.  10 U.S.C. § 10216(a)(1).  Thus, like the courts in *Walch, Williams,* and *Zuress,* the Court is not persuaded that the language of § 10216(a)(1) constitutes clear direction from Congress to extend remedies under Title VII or the Rehabilitation Act to individuals occupying dual status.

Finally, Bowers urges the Court to adopt the three-factor "incident to service" test used in *Parker v. United States*, 611 F.2d 1007 (5th Cir. 1980), to determine whether an injured service member was barred from bringing an FTCA claim.  Those factors include: (1) the duty status of the service member, (2) the site of the injury, and (3) the function performed by the service member when the injury occurred.  *Id.* at 1013-14. However, Bowers offers no authority or rationale for applying this test to claims under Title VII or the Rehabilitation Act.  The Court declines to depart from its approach in *Leistiko* and *Fisher*.

## III. CONCLUSION

In short, Bowers's claims may not be brought because they arise from her position as an ART.  It was not error for the district court to conclude that the Court's precedent in *Fisher* and *Leistiko*, which held that the National Guard technician position is irreducibly military in nature, also applies to ARTs.  The Court is not persuaded that the ART position is materially different from the position of National Guard technician such that ARTs could pursue remedies under Title VII or the Rehabilitation Act that are not available to National Guard technicians.  Moreover, even if the Court were to adopt the approach used in other circuits, Bowers's claims would be barred because they challenge the conduct of supervisory military officers of superior rank, and thereby threaten intrusion into officer-subordinate relationships.  Accordingly, the decision of the district court is **AFFIRMED**.

---

**CONCURRING IN THE RESULT**

---

ROGERS, Circuit Judge, concurring.   I agree entirely with the majority's application of the *Feres* doctrine to Bowers' case, and I concur in the result.  However, I would affirm based on Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, rather than based on Rule 12(b)(1) for lack of subject-matter jurisdiction.

The Supreme Court has refrained from treating the *Feres* doctrine as jurisdictional, and this court's use of justiciability language in one *Feres* opinion was not necessary to that case's outcome.  Under *Feres v. United States*, 340 U.S. 135 (1950), and its corollaries, no cause of action exists for Bowers' allegations, and dismissal is appropriate for failure to state a claim, a result distinct from holding that the court lacks subject-matter jurisdiction or that the case is not justiciable.  As the Supreme Court has recently noted, "[s]ubject-matter jurisdiction . . . refers to a tribunal's power to hear a case.  It presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief."  *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. ---, 2010 WL 2518523, at \*4 (2010) (internal quotation marks omitted) (citations omitted); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510-12 (2006).

In *Feres*, the Supreme Court explicitly stated that it was not relying on the jurisdiction-granting portion of the Federal Tort Claims Act:

> Jurisdiction is necessary to deny a claim on its merits as a matter of law as much as to adjudge that liability exists.  We interpret this language to mean all it says, but no more.  Jurisdiction of the defendant now exists where the defendant was immune from suit before; it remains for courts, *in exercise of their jurisdiction*, to determine whether any claim is recognizable in law.

340 U.S. at 141 (emphasis added).  The Court concluded not that the district courts lacked jurisdiction, but that "the Government is not liable."  *Id.* at 146.  The Supreme

Court reaffirmed *Feres* without mentioning jurisdiction or justiciability in *United States v. Shearer*, 473 U.S. 52 (1985), and *United States v. Johnson*, 481 U.S. 681 (1987).

In *Chappell v. Wallace*, 462 U.S. 296 (1983), while the Supreme Court referred to some cases involving justiciability to conclude that "the unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute 'special factors' which dictate it would be inappropriate to provide . . . a remedy," the Court's actual holding was that "military personnel may not *maintain a suit to recover damages* from a superior officer for alleged constitutional violations," *id.* at 304-05 (emphasis added), not that the district court lacked jurisdiction.

In *United States v. Stanley*, 483 U.S. 669 (1987), in rejecting the applicability of official immunity precedents, the Supreme Court made clear that the *Chappell* and *Stanley* holdings refer to whether a cause of action exists:

> [T]he availability of a damages action under the Constitution for particular *injuries* (those incurred in the course of military service) is a question logically distinct from immunity to such an action on the part of particular *defendants*. When liability is asserted under a statute, for example, no one would suggest that whether *a cause of action exists* should be determined by consulting the scope of common-law immunity enjoyed by actors in the area to which the statute pertains.

*Id.* at 684 (third emphasis added).

Although we also used "justiciability" language to decide a *Feres* issue in *Fisher v. Peters*, 249 F.3d 433, 445 (6th Cir. 2001), justiciability analysis was not necessary to that decision and the court should be reluctant to perpetuate the usage if it is not necessary to do so. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998). Before *Fisher*, we treated *Feres* under Rule 12(b)(6), whether the plaintiff has stated a claim, rather than under Rule 12(b)(1), whether the court has subject-matter jurisdiction, *Leistiko v. Stone*, 134 F.3d 817, 819-20 (6th Cir. 1998); *Coffman v. Michigan*, 120 F.3d 57, 58-59 (6th Cir. 1997), and after *Fisher*, we noted uncertainty surrounding whether the *Feres* doctrine was jurisdictional and declined to decide the issue, *Lovely v. United States*, 570 F.3d 778, 782 n.2 (6th Cir. 2009). Our sister circuits remain divided. *See*,

*e.g.*, *Wright v. Park*, 5 F.3d 586, 591 (1st Cir. 1993) (using justiciability language); *NeSmith v. Fulton*, 615 F.2d 196, 201 (5th Cir. 1980) (treating *Feres* as a question of whether a claim was stated); *Hupp v. U.S. Dep't of the Army*, 144 F.3d 1144, 1145-47 (8th Cir. 1998) (stating that the district court had jurisdiction, but that the case was not justiciable under *Feres*); *Stauber v. Cline*, 837 F.2d 395, 398-99 (9th Cir. 1988) (treating the *Feres* doctrine as a limit on the court's jurisdiction).  Because the Supreme Court has never treated *Feres* and its progeny as jurisdictional, I would affirm the district court's dismissal of this case under Rule 12(b)(6) for failure to state a claim.

Affirmance based on Rule 12(b)(6) is appropriate even though the district court's ruling was based on Rule 12(b)(1) because the district court's analysis did not turn on the application of Rule 12(b)(1) rather than Rule 12(b)(6).  *See Morrison*, 2010 WL 2518523, at *5 (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 359, 381-84 (1959)); *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1007-08 (6th Cir. 2009).

The district court's consideration of documents outside the complaint also does not preclude affirmance under Rule 12(b)(6).  When ruling on a Rule 12(b)(6) motion, courts consider the complaint as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 86-87 (6th Cir. 2007).  In a Rule 12(b)(6) dismissal, the court may take judicial notice of Air Force Instruction 36-108 because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The court may also consider the fraud, waste, and abuse complaint because Bowers' federal complaint refers to the fraud, waste, and abuse complaint, thereby incorporating it by reference.

Therefore, I would affirm the district court's decision to dismiss Bowers' complaint, but I would do so for failure to state a claim upon which relief can be granted.